**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vu Huy Trong Nguyen, | No. CV-26-01568-PHX-DWL (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| Luis Rosa, Jr., et al., | |
| Respondents. | |

This is a habeas corpus action under 28 U.S.C. § 2241 in which Petitioner challenges the legality of his immigration detention and seeks release from custody. (Doc. 1.) The petition is now fully briefed. (Docs. 7, 16.) For the reasons that follow, the petition is denied.

## BACKGROUND

Petitioner is a native and citizen of Vietnam who entered the United States in 1992 as a refugee. (Doc. 7-1 ¶¶ 4-5.) In 1998, Petitioner was convicted in California state court of second-degree murder. (*Id.* ¶ 6.)

In September 2012, in anticipation of Petitioner's release from state prison, the United States initiated removal proceedings against Petitioner. (*Id.* ¶ 10.) In December 2012, Petitioner was released from state prison. (*Id.* ¶ 11.) On January 22, 2013, Petitioner was ordered removed from the United States. (*Id.* ¶ 12.) However, only one week later, on January 29, 2013, Petitioner was released from immigration custody pursuant to an order of supervision ("OSUP"). (*Id.* ¶ 13. *See also* Doc. 1 at 6.)

In March 2020, Petitioner pleaded guilty to a criminal driving offense and was sentenced to probation. (Doc. 7-1 ¶ 14.)

On February 6, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 16. *See also* Doc. 1 at 6.)

On February 11, 2026, ICE issued Petitioner "a Notice of Revocation of Release which informed him that ICE revoked his OSUP pursuant to 8 C.F.R. § 241.13(i) because of the following: Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 7-1 ¶ 17.)

On February 12, 2026, Petitioner participated in an interview "and was given an opportunity to respond to the reasons for revocation of his [OSUP]." (*Id.* ¶ 18.)

On March 10, 2026, ICE "conduct a TD [travel documents] interview as part of the TD request process." (*Id.* ¶ 19.)

According to a declaration provided by an ICE officer, "ICE routinely obtains travel documents for Vietnamese citizens, including those who immigrated to the United States prior to 1995," and "ICE routinely has flights to Vietnam." (*Id.* ¶¶ 23-24.) "Once ICE receives a travel document for [Petitioner], his removal can be effectuated promptly." (*Id.* ¶ 25.)

## DISCUSSION

I.    OSUP Revocation

A.    **The Parties' Arguments**

One of the grounds for relief asserted in the petition is that "ICE violated its own rules & procedures in the revocation of parole 'O.S.U.P' without due process or authorizing from 'appropriate supervisor' according to 8 C.F.R. 241.4 and 241.13. . . .  He was not served with a 8 U.S.C. § 1226(a) warrant, a revocation of parole notice or any type of documentation signed by a supervisor.  No such document has been produced." (Doc. 1 at 6.)

In response, Respondents contend that "Petitioner incorrectly advised the court that he had no notice of his revocation of OSUP when in fact, ICE did comply with applicable

regulations . . . .  Petitioner was given the proper notice and given an interview which provided him an opportunity to respond to the reasons for revocation of his OSUP in compliance with applicable regulations.  Petitioner had also been convicted of Reckless Driving since the time he was placed on OSUP."  (Doc. 7 at 2-3.)  In support of these contentions, Respondents cite the declaration from the ICE officer.  (Doc. 7-1 ¶¶ 17-18.)

In reply, Petitioner makes no mention of the OSUP revocation issue and does not attempt to controvert Respondents' evidence regarding their asserted compliance with the applicable regulations.  (Doc. 16.)

B.    **Analysis**

Under ICE's regulations, it is permissible for ICE to detain an alien (such as Petitioner) who was previously ordered removed from the United States and then released on an OSUP "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R.  § 241.13(i)(2).[1]  However, ICE's regulations also set forth certain procedural requirements that apply in this context:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release.  The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.* § 241.13(i)(3).

A habeas petitioner may challenge ICE's compliance with these regulations under the *Accardi* doctrine, which is "a commonplace [rule] of administrative law that an agency must obey its own rules even if it had no obligation to create those rules in the first place."

---

[1]    To the extent Petitioner asserts that he had a constitutional right to a pre-deprivation hearing before his OSUP could be revoked, the Court respectfully disagrees for reasons stated in prior orders. *See, e.g., Nguyen v. Archambeault*, No. CV-25-04052-PHX-DWL, (D. Ariz. 2025), Doc. 15 at 7 ("[T]here is an ongoing debate in the lower courts about whether an alien in Petitioner's situation is entitled, as a matter of procedural due process, to a *pre*-revocation hearing conducted by an independent decisionmaker before his OSUP may be revoked based on alleged changed circumstances.  Although some courts have held or suggested that such a hearing is constitutionally required, this Court recently rejected that argument on the ground that the procedures set forth in § 241.13(i)(3)—which provide a mechanism for promptly challenging the basis for the revocation decision—supply all of the process that is due in this context.").

32 C. Wright & A. Miller, Federal Practice and Procedure § 8172 (2d ed. Sept. 2025 update). *See also Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) ("The legal proposition that agencies may be required to abide by certain internal policies is well-established."). To be clear, relief is not automatically warranted under the *Accardi* doctrine whenever an agency violates its own regulations—such a violation can be harmless. *United States v. Calderon-Medina*, 591 F.2d 529, 530-31 (9th Cir. 1979). *See also Grigorian v. Bondi*, 2025 WL 2604573, *9 (S.D. Fla. 2025) ("It is a rather unremarkable proposition that an agency must abide by its own regulations. Of course, not every agency misstep will compel reversal of agency action, much less release of someone in custody.") (cleaned up). Even so, in recent months, many district courts have granted habeas relief based on ICE's violation of the procedural requirements set forth in § 241.13 when purporting to revoke an OSUP. *See, e.g., Phan v. Noem*, 2025 WL 2898977, *5 (S.D. Cal. 2025) ("The Court's research indicates that every district court, except one, to consider the issue has determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered. This Court reaches the same conclusion. ICE's failure to comply with both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 violated Petitioner's due process rights.") (citations omitted); *Grigorian*, 2025 WL 2604573 at *10 ("The failure to provide Petitioner with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels Petitioner's release. Courts around the country have concluded likewise."); *Nguyen v. Archambeault*, 2025 WL 3250922, *1-2 (D. Ariz. 2025). After all, "[t]he opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian*, 2025 WL 2604573 at *9.

Nevertheless, Petitioner is not entitled to habeas relief based on his OSUP revocation claim for the simple reason that he has not established a violation of the applicable regulations. Although Petitioner asserts, in his petition, that he never received

- 4 -

a revocation notice, Respondents have challenged that assertion by providing sworn evidence that Petitioner did, in fact, receive both the revocation notice and the prompt informal interview required by the regulations. (Doc. 17-1 ¶ 17-18.) In his reply, Petitioner does not challenge Respondents' evidence on these points and seems to abandon his OSUP revocation claim. On this record, relief is not warranted.[2]

II.      Indefinite Detention/*Zadvydas*

      A.      **The Parties' Arguments**

The remaining potentially cognizable[3] ground for relief asserted in the petition is that "[p]er [*Zadvydas v. Davis*, 533 U.S. 678 (2001)], Petitioner's remova[l] is not reasonably foreseeable [on] account ICE/DHS has had 13 plus years to facilitate removal, his detention is not presumptively reasonable in violation of Fifth Amendment and 8 U.S.C. § 1231(a)(6) indefinite detention.. . . .  In 13 years ICE/DHS has not produced travel documents. Government has not produced evidence of removal in foreseeable future." (Doc. 1 at 6, cleaned up.)

Respondents disagree, arguing that "Petitioner was taken into custody on February 11, 2026, and ICE has taken active steps to remove any impediments towards removing Petitioner to a Vietnam. . . .  ICE intends to remove Petitioner to Vietnam and is actively working to get travel documents and put Petitioner on a routine flight to Vietnam. ICE regularly removes people with removal orders to Vietnam and anticipates no issues removing this Petitioner. Additionally, Petitioner is within the six-month detention period since he was brought into custody on February 11, 2026. Petitioner's removal to Vietnam is likely in the reasonably foreseeable future, [and] Petitioner's continued detention is not indefinite as contemplated in *Zadvydas*." (Doc. 7 at 7.)

---

[2]      The Court notes that Respondents did not produce a copy of the actual revocation notice—instead, they simply rely on the ICE officer's avowal that a revocation notice was issued and the ICE officer's summary of the contents of the unproduced revocation notice. Even though this showing is sufficient, on this record, to defeat Petitioner's OSUP revocation claim, Respondents would be better served in future cases to produce a copy of the actual notice.

[3]      To the extent the petition contains challenges related to Petitioner's conditions of confinement (Doc. 1 at 7), those challenges are not cognizable in a habeas proceeding.

In reply, Petitioner contends that "ICE has known for over thirteen years that it cannot obtain travel documents that will facilitate [his] return to Vietnam. That is why he was released from immigration detention on an order of supervision on January 29, 2013, only seven days after an immigration judge ordered him removed from the United States. ICE is no closer to obtaining travel documents now than it was in 2013. Nothing in the declaration of [the ICE officer] says anything different. Indeed, respondents have produced no evidence of ever having tried to obtain travel documents that would facilitate [Petitioner's] return to Vietnam." (Doc. 16 at 1.) Petitioner adds that "[i]t does not matter that [he] has only been in custody since February 11," as "[a]ny argument that [his] claim is premature is inconsistent with the text and structure § 1231(a) and the weight of the caselaw interpreting it, including *Zadvydas*." (*Id.* at 2-3.) Petitioner concludes: "Even if respondents have requested travel documents from the Vietnamese Embassy, that is all they can do. Vietnam has total discretion whether to issue a travel document to any individual. Simply 'processing an application' for travel documents has no bearing on whether removal is likely in the foreseeable future." (*Id.* at 3, citation omitted.)

B.    **Analysis**

Petitioner's claim for relief arises under *Zadvydas v. Davis*, 533 U.S. 678 (2001). The petitioners in that case were aliens who had been ordered removed from the United States, had not been removed during the 90-day period following the issuance of the removal order (which is sometimes known as the "removal period"), and were being held in immigration custody pursuant to 8 U.S.C. § 1231(a)(6) pending the completion of the removal process. The question presented in *Zadvydas* was "whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Id.* at 682. The Court resolved that issue as follows:

> [W]e think it practically necessary to recognize some presumptively reasonable period of detention. . . . While an argument can be made for confining any presumption to 90 days, we doubt that . . . Congress . . . believed that all reasonably foreseeable removals could be accomplished in

that time.  We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

On the one hand, the Court agrees with Petitioner that his *Zadvydas* challenge is not "premature" even though he filed his petition "before the end of the presumptively reasonable six-month period." (Doc. 16 at 2, cleaned up.)  True, some courts appear to have interpreted *Zadvydas* as foreclosing relief in this circumstance.[4]  But that interpretation is difficult to reconcile with *Zadvydas*'s clarification that it was simply establishing a presumption that detention not exceeding six months is constitutional. *Zadyvdas* did not hold that this presumption is conclusive in all cases and under all sets of facts—a point the Supreme Court emphasized in a subsequent case.  *Clark v. Martinez*,

---

[4]    *See, e.g., Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."); *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) ("Chance had not been in post-removal-order detention longer than the presumptively reasonable six-month period set forth in [*Zadvydas*].  Consequently, the district court did not err in finding that his challenge to his continued post removal detention was premature."); *Singh v. Immigration and Customs Enforcement Field Office Director*, 2025 WL 307635, *2 (W.D. Wash. 2025) ("[T]he six-month presumptively reasonable period for Petitioner's detention will not expire until February 2025.  Given that his detention is presumed reasonable until at least that time, Petitioner has failed to raise a constitutional concern regarding his continued detention."); *Luong v. Gonzales*, 2007 WL 3342727, *6 (D. Ariz. 2007) ("Petitioner's post-removal order detention has not yet approached the six-month period deemed presumptively reasonable by the Supreme Court.  Petitioner seeks release before the expiration of the presumptive six-month removal period and, therefore, his challenge to his detention under *Zadvydas* is not ripe for review.") (citations omitted).

543 U.S. 371, 384 (2005) ("We also reject the Government's argument that, under *Zadvydas*, § 1231(a)(6) authorizes detention until it approaches constitutional limits. The Government provides no citation to support that description of the case—and none exists. *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal. If we were, as the Government seems to believe, free to 'interpret' statutes as becoming inoperative when they 'approach constitutional limits,' we would be able to spare ourselves the necessity of ever finding a statute unconstitutional as applied.") (cleaned up). As a result, some courts have concluded that an alien being detained pursuant to § 1231(a)(6) may bring a constitutional challenge to his confinement even if the period of confinement has not yet reached the six-month mark. *See, e.g., Zavvar v. Scott*, 2025 WL 2592543, *6 (D. Md. 2025) ("[T]he fact that Zavvar has not yet been detained for six months does not preclude his argument that his detention is unlawful, both because the six-month presumption does not necessarily control in cases in which the petitioner was not subject to continuous detention from the issuance of the removal order, and because the six-month presumption is rebuttable."); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025) ("Although some courts have *read Zadvydas* as creating a bright-line rule—one that effectively allows the government to detain a person for at least six months without judicial review, even if there was no possibility of removal—a close reading of *Zadvydas* does not support that interpretation."); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D Cal. 2020) ("*Zadvydas* established a 'guide' for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months."); *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008) ("Nothing about this scheme supports the conclusion drawn by many courts that the presumptive legality of detention within the first six months is irrebuttable. The *Zadvydas* Court did not say that the presumption is irrebuttable, and there is nothing inherent in the operation of the

presumption itself that requires it to be irrebuttable."). The Court agrees with those decisions.[5]

On the other hand, although Petitioner is not foreclosed from pursuing a *Zadvydas* claim under these circumstances, the timing of his request means he faces a difficult burden. Petitioner's order of removal was issued on January 22, 2013 (and presumably became final that day) and Petitioner was released from immigration custody pursuant to an OSUP on January 29, 2013. At that time, Petitioner had only been detained pursuant to 8 U.S.C. § 1231(a) for seven days. Petitioner was then re-detained by ICE on February 6, 2026 and filed this action on March 6, 2026 (28 days later). As of today, May 18, 2026, Petitioner has spent 101 days in immigration custody pursuant to § 1231(a) since being redetained and 108 aggregate days in immigration custody pursuant to § 1231(a) when both detention terms are considered. "Within the six-month window, the *detainee* must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the *government* must then *disprove*. And as time passes, the burden on the government increases accordingly." *Cesar*, 542 F. Supp. 2d at 903.

On this record, Petitioner has not met his burden. First, Respondents have come forward with evidence establishing that they are making efforts to obtain travel documents for Petitioner. (Doc. 7-1 ¶ 19 ["On March 10, 2026, ICE conducted a TD interview as part

---

[5] The Court acknowledges that several Ninth Circuit cases contain passages that can be construed as suggesting that a *Zadvydas* claim may only be brought after the six-month mark. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("*Zadvydas* . . . held that after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.") (citation omitted); *Arango Marquez v. I.N.S.*, 346 F.3d 892, 898-99 (9th Cir. 2003) ("Section 1231(a)(6) does not authorize indefinite post-removal period detention, but instead imposes an implied six-month limit on such detention, provided that removal is not reasonably foreseeable."); *Xi v. U.S. I.N.S.*, 298 F.3d 832, 840 (9th Cir. 2002) ("Having spent considerably more than six months in detention, Lin is entitled to make a showing in federal court that his removal to China is not reasonably foreseeable"). However, the Court does not view those passages as constituting binding circuit law on this issue because they did not "resolve[] it after reasoned consideration." *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019).

of the TD request process."].)  Second, although there's no guarantee Vietnam will respond favorably to that request, Respondents' evidence suggests they have succeeded in obtaining travel documents for other Vietnamese citizens who entered the United States before 1995. (*Id.* ¶ 23.)   Although Respondents' submission on this point is regrettably conclusory, recent developments in other cases give the Court comfort in accepting the truth of this assertion.  *See, e.g., Nguyen v. Warden*, 2026 WL 1123448, *2-3 (C.D. Cal. 2026) (denying *Zadvydas*-based request for injunctive relief sought by a Vietnamese habeas petitioner who entered the United States before 1995 and citing other recent decisions in which *Zadvydas* claims asserted by Vietnamese habeas petitioners were mooted due to their mid-lawsuit removal to Vietnam, including at least one case that "involved a pre-1995 immigrant"); *Tran v. Rivas*, 2026 WL 594811, *3 (D. Ariz. 2026) (denying *Zadvydas*-based habeas petition filed by a Vietnamese petitioner who entered the United States before 1995 and noting that "Vietnamese nationals . . . have been successfully removed in the past months under the current administration"); *Do v. Rivas*, No. CV-25-04052-PHX-DWL, (D. Ariz. 2025), Doc. 1 ¶¶ 10-11, 20 (*Zadvydas*-based habeas petition filed by Vietnamese petitioner who was granted lawful permanent resident status in the United States in 1989 but was later ordered removed); *id.*, Doc. 24 (denying case as moot based on the petitioner's removal to Vietnam).  Given this backdrop, where Petitioner has been in immigration custody for less than four months and where Respondents are engaged in ongoing efforts (which have been successful in recent similar cases) to obtain travel documents that will facilitate Petitioner's removal to Vietnam, Petitioner is not entitled at this time to release from custody under *Zadvydas*.

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that the habeas petition (Doc. 1) is **denied**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 18th day of May, 2026.

Dominic W. Lanza
United States District Judge